CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
2/21/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MEGAN STEPANSKY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00698 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SOUTHWEST VIRGINIA REGIONAL | ) | By:  Hon. Thomas T. Cullen |
| JAIL AUTHORITY *et al.*, | ) |      United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Megan Stepansky, proceeding *pro se*, filed this action under 42 U.S.C. § 1983, asserting alleged violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (*See* Am. Compl. [ECF No. 45].) Her amended complaint asserts claims against Defendants Scott County, Virginia Sheriff's Department; Deputy Robert Williams; Southwest Virginia Regional Jail Authority; Probation Officer Jessica Caldwell; and Wexford Health Sources ("Wexford").[1] (*See id.* at 1.) Now before the Court is Defendant Wexford's motion to dismiss for failure to state a claim. (Wexford's Mot. to Dismiss [ECF No. 65].) For the following reasons, the Court will grant the motion and dismiss Plaintiff's claims against Wexford.

I.

As it relates to Wexford's motion, Plaintiff alleges that, on January 15, 2023, at approximately 8:30 a.m., Deputy Robert Williams of the Scott County, Virginia, Sheriff's Department and another unnamed deputy arrested Plaintiff and took her to the Southwest

---

[1] Her amended complaint also brought claims against the Virginia Department of Corrections, but the Court has since dismissed those claims. (*See* Order, July 12, 2024 [ECF No. 47].)

Virginia Regional Jail Authority in Duffield, Virginia ("Duffield"). (Am. Comp. 4–5.) Plaintiff remained at Duffield from January 15, 2023, until February 17, 2023, while awaiting resolution of her criminal charges. (*Id.* at 5–6.)

Wexford hires and manages the medical staff employed at Duffield. (*Id.* at 6.) Upon her arrest, Plaintiff informed the Duffield medical staff that she suffers from severed "CPTSD" (presumably complex post-traumatic stress disorder) and bipolar disorder and takes daily medications—Trintellix[2] and Vistaril—to treat her conditions. (*Id.* at 6.) Despite making the medical staff aware of her conditions, she was not consistently given Trintellix during her time at Duffield. (*See id.* at 6.) Instead, she only received her medication on eight of the 33 days of her detention. (*Id.*) According to Plaintiff, the irregularity with which she received her medication caused her mental stability to falter. (*Id.*) She claims that she suffered severe panic attacks multiple times per day while she was detained. (*Id.*) She further claims one nurse accused her of being "homicidal" after Plaintiff filed a grievance against the medical staff. (*Id.* at 7.) Based on this accusation, Plaintiff was isolated in the facility's Medical Ward for 13 consecutive days for "surveillance." (*Id.*)

While isolated in the Medical Ward, Plaintiff was refused medications, regular showers, and toilet paper. (*Id.*) The male corrections officers who monitored her during her isolation watched her and other female inmates while they changed clothes and relieved themselves. (*Id.*) On one occasion, a male corrections officer, Officer Spurlock, called other male guards to the window while Plaintiff was undressed. (*Id.*) Plaintiff further claims that Spurlock and

---

[2] Plaintiff alleges that, prior to her arrest, she had taken 20mg of Trintellix a day for more than four years. (Am. Compl. 6.)

others "watch[ed], mock[ed,] and laugh[ed] at nude female inmates." (*Id.*) Additionally, Plaintiff alleges she was unable to sleep during her isolation due to the "antagonization of another inmate." (*Id.*) She also claims that the Duffield medical staff were "verbally and medically abusive" toward her and "mocked and laughed at" her panic attacks during her isolation in the Medical Ward. (*Id.*)

Plaintiff claims that the medical staff, hired by Wexford, were deliberately indifferent to her medical needs and "deliberately altered" her psychological well-being during her period of incarceration. (*Id.* at 6.) She further claims that Wexford "hires and employs incompetent, malicious, ill-intended Medical Staff that do not supply the necessary medical needs of inmates," and that the medical staff at Duffield are not sufficiently educated to perform their duties. (*Id.*) She also claims the medical staff "are guilty of cruel & unusual punishment" and retaliated against her for filing a grievance. (*Id.* at 6–7.)

Wexford moves to dismiss Plaintiff's claims against it, arguing Plaintiff has not alleged sufficient facts to state a plausible § 1983 claim. (*See* Wexford's Memo. in Supp. of Mot. to Dismiss [ECF No. 66] (hereinafter "Wexford's Br.").) Plaintiff timely responded to Wexford's motion, and Wexford filed a timely reply. (*See* Pl.'s Resp. in Opp'n to Wexford's Mot. to Dismiss [ECF No. 69] (hereinafter "Pl.'s Resp."); Wexford's Reply in Supp. of Mot. to Dismiss [ECF No. 70] (hereinafter "Wexford's Reply").) Wexford's motion is now ripe for review.

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up).

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution

and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Plaintiff claims that Wexford is liable for its staff's deliberate indifference to her medical needs. Because Plaintiff alleges that the events described in the complaint occurred at Duffield, a regional jail, the Court infers that she was a pretrial detainee at the time of those events. Accordingly, her claims arise under the Fourteenth Amendment, which protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that [are] excessive in relation to that purpose." *Jenkins v. Woodard*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (quoting *Short v. Hartman*, 87 F.4th 593, 599); *see Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim.") (citations and internal quotation marks omitted). And because the Fourteenth Amendment, rather than the Eighth Amendment, governs her deliberate indifference claims, the Court will grant Wexford's motion to dismiss Plaintiff's Eighth Amendment Claim against it.

Ordinarily, to state a claim for deliberate indifference to a medical need in violation of the Fourteenth Amendment, a detainee must allege that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should

> have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). But when the defendant is a corporate entity rather than an individual, that defendant can only be liable under § 1983 if "an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (citing *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999)); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) ("[P]rinciples of respondeat superior have no application to § 1983 actions.") (citations omitted).

Here, the only policy or custom Plaintiff arguably identifies is Wexford's alleged practice of "hir[ing] and employ[ing] incompetent, malicious, ill-intended Medical Staff" to treat the inmates at Duffield. (Am. Compl. 6 (also alleging that "[t]he Medical Staff at SWVRJA Duffield (hired by Wexford Medical Solutions) are not educated well enough to complete their required tasks to keep inmates safe").) The Supreme Court has recognized that, "[i]n limited circumstances, a [corporation's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official [corporate] policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But a corporate entity's liability for a constitutional deprivation "is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–23 (1985) (plurality opinion)). To trigger § 1983 liability on this basis, the corporation's training program must be inadequate, and "the training deficiency 'must be closely related to the ultimate injury,' meaning it must cause the incident" about which the plaintiff complains. *Est. of Jones by Jones v. City of Martinsburg,*

*W. Va.*, 961 F.3d 661, 672 (4th Cir. 2020), *as amended* (June 10, 2020) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). Additionally, the failure to adequately train employees "must amount to deliberate indifference to the rights of person with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61 (cleaned up). "Only then 'can such a shortcoming be properly thought of as a [corporate] 'policy or custom' that is actionable under § 1983.'" *Id.* (quoting *City of Canton*, 489 U.S. at 389).

The "deliberate indifference" required to state a claim for corporate or municipal liability requires proof that the defendant "disregarded a known or obvious consequence of [its] action[s]." *Connick*, 563 U.S. at 61 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997)); *Cf. City of Canton*, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). Thus, absent "actual or constructive notice that a particular omission in [its] training program causes [corporate] employees to violate citizens' constitutional rights," there can be no corporate liability. *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407); *see id.* at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Because such liability "cannot be predicated on a theory of *respondeat superior*, a single incident is almost never enough to warrant [corporate] liability." *Jones*, 961 F.3d at 672 (citing *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999)). Instead, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.,* 520 U.S. at 409).

Plaintiff has not alleged any facts which would allow the Court to infer that Wexford was deliberately indifferent to the inadequate training of its employees. Plaintiff does not allege that Wexford was on notice that its training procedures were constitutionally deficient. She alleges only that "[a] supervisory nurse on the SWVRJA Medical Staff has an entire mouth full of completely black teeth" and claims this "show[s] the level of medical care/competency standards these individuals uphold for themselves as 'Medical' Staff through Wexford Medical Solutions['] employment." (Am. Compl. 6.) But Plaintiff does not allege that this employee ever rendered constitutionally inadequate care to Plaintiff or that any implied training deficiency related to employees' personal hygiene caused her injuries. And there is no reasonable basis to hold that a single employee's dental condition is evidence of a widespread failure to train medical employees on the constitutional standards surrounding medical care of prisoners. Rather, for an allegedly defective corporate training policy to create § 1983 liability, "a sufficiently close causal link must be shown between potentially inculpating training deficiency or deficiencies and specific violation." *See Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("[A] specific deficiency rather than general laxness or ineffectiveness in training be shown."); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) ("[M]unicipal liability will attach only for those policies or customs having a *specific* deficiency or deficiencies such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.") (emphasis in original) (cleaned up).

Plaintiff does not allege, in more than a conclusory manner, that Wexford had notice that its employees were improperly trained to care for a prisoner's psychiatric needs or that any such deficiency in their training would cause its employees to act with deliberate

indifference to those needs. Consequently, on the facts alleged, Wexford cannot be liable for the alleged deliberate indifference of its employees to Plaintiff's medical needs, and Plaintiff's claim against Wexford fails.

### IV.

For the reasons set forth above, the Court will grant Wexford's motion to dismiss (ECF No. 65) and dismiss Plaintiff's claims for relief against Wexford.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 21st day of February, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE